506 P.2d 1065

**STATE of Arizona, Appellee,**

v.

**Carlynn SORRELL, Appellant.**

**No. 2372.**

Supreme Court of Arizona,
In Banc.
Feb. 26, 1973.

Gary K. Nelson, Atty. Gen., by Louis A. Moore, Jr., Asst. Atty. Gen., Phoenix, for appellee.

Harvey Brown, Phoenix, for appellant.

HAYS, Chief Justice.

This is an appeal by the defendant, Carlynn Sorrell, from a conviction of the crime of robbery for which he was sentenced to a term of five to ten years in prison. He was tried at the same time and acquitted by the same jury on a charge of stealing a motor vehicle. The defense was alibi, and much of the testimony related to the question of whether there was enough artificial light to recognize the defendant.

The facts, taken in a light most favorable to sustain the verdict are as follows: Gary Dobbins, bartender at Jean's Tavern in Chandler, locked the front door of the premises and walked around the building with his wife. He unlocked the door to his pickup and his wife got in on the passenger side. He walked around the truck and got part way in on the driver's side. The door was still open and his left leg was still outside the vehicle, and he was sitting on the car seat when a man stuck something against his ribs and demanded his money. He had no money with him, but his wife was afraid of his being injured, and gave the man the contents of her purse—about $5.00. He thought that Dobbins had more money so there was some conversation. During those few minutes, the dome light of the pickup was on (because the door was open), the light over the back door of the bar was on, some other lights were on at different distances, and there was much dispute over whether the bright parking-lot lamps of Basha's Grocery were lit (the tavern was part of a Basha's shopping center). Dobbins recognized the defendant's voice and got a good look at him from very closeup, but could not then think of his name. When the man left, Dobbins drove to the front of the bar, went in and called the police. He remembered that he had had several conversations in the tavern with the defendant on previous occasions—two of them approximately one-half hour long—and had written his name on a tab in the cash register. He found the tab and, in his call to the police, reported that he had just been robbed by Carlynn Sorrell.

Police Officer James Jones testified that he was on routine patrol, received a message that there had been a robbery at Jean's Tavern, and sped towards that location. On the way he saw a speeding car that he thought might be the fleeing robber, so he gave chase. As the car rounded a corner, Jones saw the driver stop, jump out and run, and recognized the man as the defendant. The officer yelled: "Carlynn, come back here." As the fleeing man passed under a light, the officer got another look, and again recognized him. He had known defendant since they went to high school together. The defendant managed to evade him, however.

Defendant's first contention is that the court erred in refusing to allow evidence of the lighting conditions at 2:00 A. M. the night before the trial—three months after the crime was committed. The court held that it was too remote in time to be relevant unless the witness could show that the lighting conditions were unchanged. Despite an offer of proof, the defense failed to show the conditions were unchanged. Nothing was said about the presence or absence of moonlight, or clouds, on either date, and no attempt was made to show how the truck's dome light affected the situation. No attempt was made to show that trees might have obscured any of the lights that were on, the difference in the foliage of the trees, etc. We hold that the trial court did not abuse its discretion in refusing to admit evidence as to lighting.

Defendant's second contention is that the court erred in refusing to allow the jury to view the premises. The value of a view, three months after the crime was committed, is subject to the same infirmities as testimony regarding the condition of the lighting. Without an adequate showing that the conditions were the same, a view would be worthless. We have held that allowing the jury to view the premises

is a matter for the trial court's discretion. State v. Prewitt, 104 Ariz. 326, 452 P.2d 500. We hold that in the instant case that discretion was not abused.

■■ Prior to the trial, it was stipulated that the large lights on Basha's parking lot "never stayed on later than 10:00 p. m." Defendant requested an instruction that the effect of such a stipulation was to make the contents conclusive. The trial judge refused to give the instruction, and instead advised the jury that "[i]f there has been a stipulation . . . you may consider the stipulated fact as evidence." This is so obviously erroneous that the State in its brief concedes that "it would have been more proper to give the requested instruction than the one it gave."

> "Stipulations by counsel are favored in the law because they reduce the time of trial and narrow the issues. Facts stipulated by counsel are conclusive . . . and binding on the parties unless, upon appropriate and timely motion and for good cause shown, the parties are relieved therefrom." Gangadean v. Flori Investment Co., 106 Ariz. 245, 474 P.2d 1006.

When there has been a stipulation of fact:

> "[T]he fact is thereafter to be taken for granted; so that one party need offer no evidence to prove it, and the other is not allowed to disprove it." 9 Wigmore, Evidence, 3d Ed. § 2588.

■ In view of the stipulation here, that the lights were always off after 10:00 P. M. and of the uncontradicted testimony that the robbery took place at about 2:00 A.M., there is no excuse for the attorneys offering evidence as to whether the lights were off or on. The court's refusal to instruct that the stipulation was conclusive was error. However, since this issue as to the lights is so minor in context of the entire evidence, we cannot hold that the error was prejudicial, and since the matter is not of constitutional stature, there is no reversible error. Ariz.Const., art. 6, § 22, A.R.S.

■ Defendant's last contention is that the court erred in giving an instruction that flight may tend to prove consciousness of guilt and that in the instant case there was merely a departure from the scene of the robbery. Defendant seems to admit the open flight with immediate pursuit, as to the charge of stealing the car, but he was acquitted of that, and there appears to have been no flight and pursuit from the scene of the robbery. Dobbins testified that when the money was passed to the defendant, the defendant said: "Now I want you to leave and I am going to watch you." At that time the robber was standing about five feet behind the pickup and after which time Dobbins closed the door and drove away from the robber. It is defendant's theory that the instruction, while perhaps valid as to the charge of car theft, might have confused the jury, since the cases were tried together.

James Wheeler, the owner of the stolen car, testified that he left it unlocked in front of his sister's house where he had gone to pick up his children at about 11:45 A.M. When he came out fifteen minutes later, it was gone and he immediately reported it to the police. Since defendant, at 2:00 A.M. was fleeing from the vicinity of the robbery in that car, it is only reasonable to treat the flight as from the robbery, as well as from the car theft.

We cannot ignore the fact that following the robbery the defendant ran from the police officer who recognized him from previous contacts and called him by name. The defendant cites State v. Rodgers, 103 Ariz. 393, 442 P.2d 840, in support of his position, but we find no way to apply that case here. To instruct on flight was not error.

Judgment affirmed.

CAMERON, V. C. J., and STRUCK-MEYER, LOCKWOOD and HOLOHAN, JJ., concur.